# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ADAM COLON,                          :        Civil No. 1:18-CV-840
                                     :
    Plaintiff                :
                                     :
v.                                   :        (Magistrate Judge Carlson)
                                     :
APRIL KENWALL, et al.,               :
                                     :
    Defendants               :


## MEMORANDUM OPINION

## I.  Statement of Facts and of the Case

This case comes before us for consideration of a motion to dismiss some of the claims set forth in the plaintiff's amended complaint. (Doc. 23.) The well-pleaded facts set forth in that amended complaint describe a pattern of sexual exploitation of the plaintiff, a state inmate, by a correctional officer, and allege as follows:

The plaintiff, Adam Colon, was a mentally disabled, illiterate state inmate who only spoke broken English and Spanish. Colon was housed in the State Correctional Institution, Camp Hill where he was employed as inmate worker in the kitchen at SCI Camp Hill under the supervision of Correctional Officer April Kenwall. (Doc. 21, ¶ 8.)  Over a one year period Kenwall sexually exploited

Colon, forcing him to engage in unwanted sexual acts, including intercourse, on numerous occasions at various locations within the prison. (Id., ¶¶ 9-20.) Colon alleges that he brought this sexual abuse to the attention of supervisory officials, including Defendant Laurel Harry, the Superintendent at SCI Camp Hill, but these supervisors did nothing to prevent this sexual exploitation or protect Colon from abuse at the hands of Correctional Officer Kenwell. (Id., ¶¶ 9 and 13.) According to Colon, Kenwell was eventually investigated, prosecuted and convicted for her role in this sexual exploitation of the inmates entrusted to her care. (Id., ¶¶ 20-32.)

Set against the backdrop of these well-pleaded facts, Colon's amended complaint names April Kenwell, Superintendent Laurel Harry, an unnamed prison supervisor, and the Pennsylvania Department of Corrections as defendants. (Id.) The amended complaint then sets forth seven causes of action against these defendants including: (1) a claim of assault and battery against Kenwell, (Id., Count I); (2) claims under the federal and state constitutions, and the Prison Rape Elimination Act, 42 U.S.C. § 30301, *et seq.,* against all defendants arising out of these alleged sexual assaults, (Id., Count II); (3) failure to intervene claims against Defendant Harry and the Department of Corrections arising under the federal and state constitutions, and the Prison Rape Elimination Act, 42 U.S.C. § 30301, *et seq.*, (Id., Count III); (4) a claim of deliberate indifference in violation of the

federal and state constitutions, and the Prison Rape Elimination Act, 42 U.S.C. § 30301, *et seq*., leveled against Defendant Kenwell, (Id., Count IV); (5) a state common law negligence claim lodged against all defendants, (Id., Count V); (6) a state common law tort claim of intentional infliction of emotional distress, (Id., Count VI); and (7) federal statutory claims against all defendants brought pursuant to the Americans with Disabilities Act, (ADA), 42 U.S.C. §§ 12201 et seq., and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a). (Id., Count VII.)

The defendants have now moved to dismiss some, but not all, of these claims. (Doc. 23.) Specifically in their motion to dismiss, the defendants assert that claims for damages against the Department of Corrections are barred by the Eleventh Amendment to the United States Constitution. The defendants further contend that the doctrine of sovereign immunity precludes claims against state employees for negligence or intentional infliction of emotional distress. In addition, the defendants contend that any claims brought by Colon premised upon the Prison Rape Elimination Act also fail as a matter of law because this act does not provide for a private right of action. Further, according to the defendants, Colon's ADA and Rehabilitation Act claims fail as a matter of law with respect to both the individual and institutional defendants. Finally, in their motion to dismiss the defendants argue that Colon's amended complaint fails to state a constitutional

3

tort claim against the sole supervisory defendant named in the complaint, Defendant Harry.

This motion is fully briefed by the parties and is, therefore, ripe for resolution. For the reasons set forth below, the motion to dismiss will be granted, in part: (1) with respect to the plaintiff's ADA and Rehabilitation Act claims; (2) with respect to the plaintiff's claims for damages from the Commonwealth of Pennsylvania, Department of Corrections; (3) with respect to the plaintiff's state law negligence and intentional tort claims; and (4) with respect to the plaintiff's claims brought pursuant to the Prison Rape Elimination Act 42 U.S.C. § 30301, *et seq*. In all other respects, the motion to dismiss is denied.

## II. <u>Discussion</u>

### A. <u>Rule 12(b)(6) – The Legal Standard</u>

The defendants have moved to dismiss the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting that the plaintiff has continued to fail to allege facts that state a claim upon which relief may be granted. With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) continuing with our opinion in <u>Phillips [v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S. Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the Court must accept as true all allegations in the complaint, and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. <u>Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.</u>, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." <u>Associated Gen. Contractors of Cal. v. California State Council of Carpenters</u>, 459 U.S. 519, 526 (1983). As the Supreme Court held in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond

the level of mere speculation. As the United States Court of Appeals for the Third

Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In practice, consideration of the legal sufficiency of a complaint entails a

three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff

must plead to state a claim.' Iqbal, 556 U.S. at 675. Second, the court should

identify allegations that, 'because they are no more than conclusions, are not

entitled to the assumption of truth.' Id. at 679. Finally, 'where there are well-

pleaded factual allegations, a court should assume their veracity and then

determine whether they plausibly give rise to an entitlement for relief.' Id."

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).

In undertaking this task, the court generally relies only on the complaint,

attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d

263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic

document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." <u>Pension Benefit Guar. Corp. v. White Consol. Indus.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." <u>Pryor v. Nat'l Collegiate Athletic Ass'n</u>, 288 F.3d 548, 560 (3d Cir. 2002); <u>see also</u> <u>U.S. Express Lines, Ltd. v. Higgins</u>, 281 F.3d382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment"). However, the court may not rely on other parts of the record in determining a motion to dismiss. <u>Jordan v. Fox, Rothschild, O'Brien &Frankel</u>, 20 F.3d 1250, 1261 (3d Cir. 1994).

It is against these legal guideposts that we now evaluate the adequacy of the allegations set forth in this amended complaint.

**B.** **The Motion to Dismiss Should be Granted, in Part, and Denied, in Part.**

The defendants have moved to dismiss a number of counts set forth in Colon's amended complaint. With commendable candor, plaintiff's counsel

acknowledges that some of these claims are subject to dismissal, while contesting the legal viability of other claims. Our own review of the defendants' motion, and Colon's response, also convinces us that several of these claims fail as a matter of law, while others survive. Our analysis of the various legal claims challenged in this motion to dismiss is set forth below.

1. **The Eleventh Amendment to the United States Constitution Bars Civil Rights Claims for Damages Lawsuit Against the Commonwealth of Pennsylvania**

At the outset, the defendants seek to dismiss the civil rights damages claims leveled against the Commonwealth of Pennsylvania, Department of Corrections. Upon reflection, Colon does not contest the dismissal of this claim, and we agree that this specific claim is subject to dismissal. Dismissal of this claim is warranted because it runs afoul of basic constitutional and statutory rules limiting lawsuits against state agencies and officials. First, as a matter of constitutional law, the Eleventh Amendment to the Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the . . . States . . . ." U. S. Const. Amend XI. By its terms, the Eleventh Amendment strictly limits the power of federal courts to entertain cases brought by citizens against the state and state agencies. Moreover, a suit brought against an individual acting in his or her official capacity

constitutes a suit against the state and therefore also is barred by the Eleventh Amendment. Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989).

Pursuant to the Eleventh Amendment, states, state agencies and state officials who are sued in their official capacity are generally immune from lawsuits brought against them by citizens in federal courts. Seminole Tribe v. Florida, 517 U.S. 44, 54 (1996). This proscription directly applies here. As the Third Circuit has stated,

> Because the Commonwealth of Pennsylvania's Department of Corrections is a part of the executive department of the Commonwealth, see Pa.Stat.Ann., tit. 71, § 61, it shares in the Commonwealth's Eleventh Amendment immunity. Such immunity, . . . , may be lost in [only] one of two ways: (1) if the Commonwealth waived its immunity; or (2) if Congress abrogated the States' immunity pursuant to a valid exercise of its power. See College Sav. Bank, 527 U.S. at 670, 119 S.Ct. 2219; Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 240-41, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985).

Lavia v. Pennsylvania, Dept. of Corr., 224 F.3d 190, 195 (3d Cir. 2000).

Under the Eleventh Amendment, the Commonwealth's immunity exists as a matter of law unless waived by the state, or expressly and unequivocally abrogated by Congress. In this case, it is clear that Congress has not expressly abrogated this constitutional immunity with respect to federal civil rights lawsuits against the Commonwealth of Pennsylvania Department of Corrections, and the Commonwealth clearly has not waived its immunity. See Lavia, 224 F.3d at 195.

Quite the contrary, the Commonwealth has specifically by statute invoked its Eleventh Amendment immunity in 42 Pa.C.S.A. § 8521(b). Thus, while Pennsylvania has, by law, waived sovereign immunity in limited categories of cases brought against the Commonwealth in state court, see 42 Pa.C.S. § 8522, Section 8521(b) flatly states that: "Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States." 42 Pa.C.S. §8521(b). Moreover, beyond these constitutional considerations, as a matter of statutory interpretation, the plaintiff cannot bring a damages action against the Commonwealth since it is also well-settled that a state, a state agency, or a state official acting in an official capacity is not a "person" within the meaning of 42 U.S.C. § 1983, the principal federal civil rights statute. Will v. Michigan Dep't. of State Police, 491 U.S. 58, 71 (1989).

These basic legal tenets apply here and are fatal to this claim against the Commonwealth of Pennsylvania Department of Corrections, since these federal civil rights claims for damages against the Commonwealth of Pennsylvania Department of Corrections are barred both by the Eleventh Amendment to the United States Constitution and by cases construing the federal civil rights statute,

42 U.S.C. § 1983. Therefore, since this state agency cannot be sued in this fashion in federal court, this claim will be dismissed.

**2.** **Colon May Not Premise a Claim Upon the Prison Rape Elimination Act Since that Statute Creates No Privately Enforceable Rights or Remedies**

In addition, the defendants have challenged Colon's claims brought pursuant to the Prison Rape Elimination Act, 42 U.S.C. § 30301, *et seq*., arguing that this federal statute does not create a private right of action. Colon does not dispute this argument, and we agree that it is well-settled that, "[t]he Prison Rape Elimination Act . . . does not give rise to a private cause of action." <u>Miller v. Brown</u>, No. 1:12–CV–01589 LJO, 2014 WL 496919, at *8 (E.D.Cal. Feb. 6, 2014) <u>report and recommendation adopted</u>, No. 1:12–CV–01589 LJO, 2014 WL 806957 (E.D.Cal. Feb. 28, 2014); <u>see e.g.</u>, <u>Njos v. United States</u>, No. 3:14-CV-1960, 2015 WL 5695658, at *6 (M.D. Pa. Sept. 24, 2015), <u>report and recommendation adopted in part, rejected in part,</u> No. 3:14-CV-1960, 2016 WL 1720816 (M.D. Pa. Apr. 29, 2016); <u>McCloud v. Prack</u>, 55 F.Supp.3d 478, 480 (W.D.N.Y.2014); <u>Porter v. Jennings</u>, No. 1:10 CV 01811 AWI, 2012 WL 1434986, at *1 (E.D.Cal. Apr. 25, 2012); <u>McNaughton v. Arpaio</u>, No. CV 10–1250–PHX–DGC (LOA), 2010 U.S. Dist. LEXIS 85033, at *6–7, 2010 WL 2899077 (D. Ariz. July 21, 2010); <u>Law v. Whitson</u>, No. 2:08–CV–0291 SPK, 2009 WL 5029564, at *4 (E.D. Cal. Dec. 15,

2009) ("It is clear, however, that the Prison Rape Elimination Act does not create a private right of action."); <u>LeMasters v. Fabian</u>, Civil No. 09–702 DSD/AJB, 2009 U.S. Dist. LEXIS 53016, 2009 WL 1405176, at *2 (D.Minn. May 18, 2009); <u>Bell v. County of L.A.</u>, No. CV07–8187–GW(E), 2008 U.S. Dist. LEXIS 74763, 2008 WL 4375768, at *6 (C.D. Cal. Aug 25, 2008); <u>Rindahl v. Weber</u>, No. CIV. 08–4041–RHB, 2008 U.S. Dist. LEXIS 105792, 2008 WL 5448232, at *1 (D.S.D.Dec.31, 2008). Therefore, any claims made by Colon that are premised upon the existence of a private right of action derived from the Prison Rape Elimination Act fail as a matter of law and will be dismissed.

### 3.   <u>Colon's State Law Intentional Tort Claims Fail</u>

The defendants have also moved to dismiss Colon's state law tort claims of negligence and intentional infliction of emotional distress, arguing that the doctrine of sovereign immunity bars this claim against state employees. We agree that the defendants are entitled to raise the bar of sovereign immunity as a defense to a number of these state law claims since it is beyond dispute that, "[t]he Department of Corrections is an agency of the Commonwealth and the defendants, as employees of an agency of the Commonwealth, are entitled to the protection afforded by sovereign immunity." <u>McGrath v. Johnson</u>, 67 F. Supp. 2d 499, 511 (E.D. Pa. 1999) (citing <u>Maute v. Frank</u>, 441 Pa. Super. 401, 402, 657 A.2d 985,

986 (1995) (state prison officials enjoy sovereign immunity); <u>Robles v. Pennsylvania Dep't of Corrections</u>, 718 A.2d 882, 884 (Pa. Commw. Ct. 1998) (same)), <u>aff'd</u>, 35 F. App'x 357 (3d Cir. 2002). Moreover,

> [S]overeign immunity ... stems from the familiar proposition that the Commonwealth and its employees and officials enjoy broad immunity from most state law claims, immunity that is expressly embraced by statute, which provides that: "it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." 1 Pa.C.S. § 2310; <u>see also</u> <u>Moore v. Commonwealth</u>, 114 Pa.Cmwlth. 56, 538 A.2d 111, 115 (Pa. Commw. 1988) ("In other words, if the Commonwealth is entitled to sovereign immunity under Act 152, then its officials and employees acting within the scope of their duties are likewise immune"). This grant of immunity "applies to Commonwealth employees in both their official and individual capacities, so long as the employees are 'acting within the scope of their duties.'" <u>Larsen v. State Employees' Ret. Sys.</u>, 553 F. Supp. 2d 403, 420 (M.D. Pa. 2008). Conduct of an employee is within the scope of employment if " 'it is of a kind and nature that the employee is employed to perform; [and] it occurs substantially within the authorized time and space limits....'" <u>Brautigam v. Fraley</u>, No. 09–1723, 2010 WL 480856, *4 (M.D. Pa. Feb. 4, 2010) (Rambo, J.)

<u>Thomas v. Shutika</u>, No. 4:12-CV-692, 2014 WL 2514817, at *7 (M.D. Pa. June 4, 2014); <u>Rosa-Diaz v. Harry</u>, No. 1:17-CV-2215, 2018 WL 3432547, at *12 (M.D.

Pa. June 14, 2018), <u>report and recommendation adopted,</u> No. 1:17-CV-2215, 2018 WL 3427657 (M.D. Pa. July 16, 2018).

As a general matter, subject only to nine specific statutory exceptions, this sovereign immunity bars state law tort claims like those alleged here, since Commonwealth employees are immune from liability for either negligence or intentional torts. <u>McGrath</u>, 67 F. Supp. 2d at 511, <u>aff'd</u>, 35 F. App'x 357 (3d Cir. 2002). In fact, courts have repeatedly concluded that claims for intentional infliction of emotional distress brought against Commonwealth employees arising out of actions taken by those employees within the scope of their official duties are barred by sovereign immunity. <u>See e.g.,</u> <u>Ray v. Pennsylvania State Police</u>, 654 A.2d 140, 141 (Pa. Commw. Ct. 1995), <u>aff'd</u>, 544 Pa. 260, 676 A.2d 194 (1996) (citing <u>Pickering v. Sacavage,</u> 642 A.2d 555, <u>appeal denied</u>, 539 Pa. 671, 652 A.2d 841 (No. 275 M.D.Alloc.Dkt., filed December 5, 1994) (holding that a state trooper acting within the scope of his duties is protected by sovereign immunity from intentional infliction of emotional distress claims)). Given this settled case law, Colon's intentional infliction of emotional distress claim fails as a matter of law and should be dismissed.

Likewise, with respect to any state law negligence claims, the Commonwealth of Pennsylvania has explicitly retained its sovereign immunity and

has not waived immunity except in nine carefully defined and limited circumstances: 1) vehicle liability; 2) medical-professional liability; 3) care, custody or control of personal property; 4) Commonwealth real estate, highway and sidewalks; 5) potholes and other dangerous conditions; 6) care, custody or control of animals; 7) liquor store sales; 8) National Guard activities; and 9) toxoids and vaccines. 42 Pa.C.S. § 8522(b). None of these narrow exceptions appears to have any application to the facts and circumstances of this particular case, which involves allegations of negligence arising out of the alleged sexual exploitation of an inmate by a correctional officer. Therefore, these negligence claims would also be barred by the doctrine of sovereign immunity.

### 4. Colon's Individual Capacity ADA and Rehabilitation Act Claims Against Defendant Harry Fail as a Matter of Law

While the gist of Colon's amended complaint appears to be allegations that he was sexually exploited by a correctional officer, and that the officer's superiors failed to intervene and protect him, Colon's amended complaint also appears to allege violations of the Americans with Disabilities Act, (ADA), 42 U.S.C. § 12201 et seq., and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a). The precise nature of these Rehabilitation Act and ADA claims is not entirely clear from Colon's amended complaint, which simply alleges as follows:

Plaintiff, Mr. Adam Colon, is an adult that is mentally disabled and illiterate, and currently incarcerated at SCI Benner Township under institution number BY8069, located at Institution Drive, Bellefonte, PA 16823. At all times relevant, Plaintiff Colon was incarcerated at SCI Camp Hill, 2500 Lisburn, Camp Hill, PA 17001, or at SCI Benner Township.

At all relevant times, Ms. Laurel Harry was the Superintendent at SCI Camp Hill, 2500 Lisburn Road, Camp Hill, PA 17001. At all relevant times, Defendant Harry acted under the color of state law and is being sued in her individual and official capacity.

Defendant Pennsylvania Department of Corrections by and through Defendants Kenwell, Harry, and Doe, and other DOC staff, discriminated against Plaintiff Colon and caused him to be excluded from participation in programs, inmate employment and denied access to services at SCI Camp Hill, due to his disabilities in violation of Title II of the Americans with Disabilities Act.

Defendant Pennsylvania Department of Corrections, a recipient of Federal Funds, caused Plaintiff Colon to be excluded from participation in programs, inmate employment and denied access to services at SCI Camp Hill due to his disabilities in violation of section 504 of the Rehabilitation Act.

Defendants discriminatory practices against Plaintiff Colon are on-going and continue to harm Plaintiff.

Defendants have failed and refused to take remedial action regarding their discriminatory practices.

(Doc. 21, ¶¶2, 4, 73-76.)

Cast in these terms, in our view Colon's ADA and Rehabilitation Act claims

fail for at least two reasons. First,

> [T]he law is well-established in the Third Circuit that parties cannot be held liable in their individual capacities under . . . the ADA or under § 504 of the Rehabilitation Act, . . . . See A.W. v. Jersey City Public Schools, 486 F.3d 791, 804 (3d Cir. 2007) ("Suits may be brought pursuant to [the Rehabilitation Act] against recipients of federal assistance, but not against individuals."); Koslow v. Pennsylvania, 302 F.3d 161, 178 (3d Cir. 2002) (no individual liability under the ADA); Chatterjee v. Sch. Dist. of Phila., 170 F.Supp.2d 509, 515–16 (E.D. Pa. 2001) ("[I]ndividuals are not liable in their individual capacities under ... the PHRA."). See also Walter v. Cumberland Valley Sch. Dist., No. 4:08–cv–1586, 2010 WL 2404367, at *5, 2010 U.S. Dist. LEXIS 57177, at *20 (M.D. Pa. June 10, 2010) (observing that no liability exists under, *inter alia,* the ADA and PHRA).

O'Donnell v. Pennsylvania Dep't of Corr., 790 F. Supp. 2d 289, 308 (M.D. Pa. 2011), aff'd, 507 F. App'x 123 (3d Cir. 2012). Therefore, to the extent that Colon's amended complaint attempts to state claims under the ADA or Rehabilitation Act against individual defendants in their individual capacity, this pleading fails to state a claim upon which relief may be granted.

Beyond this threshold obstacle, there is a second, fundamental problem with these ADA and Rehabilitation Act claims—the elements of these claims simply do not correspond with the well-pleaded facts set forth in the amended complaint. "To successfully state a claim under Title II of the ADA, a person 'must demonstrate: (1) he is a qualified individual; (2) with a disability; (3) [who] was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason

of his disability.' Bowers v. Nat'l Collegiate Athletic Ass'n, 475 F.3d 524, 553 n.32 (3d Cir. 2007)." Haberle v. Troxell, 885 F.3d 170, 178–79 (3d Cir. 2018). Similarly, "[t]o state a claim under § 504 [of the Rehabilitation Act], a plaintiff must demonstrate that: (1) []he is a qualified individual with a disability; (2) []he was denied the benefits of a program or activity of a public entity which receives federal funds; and (3) []he was discriminated against based on h[is] disability. See 29 U.S.C. § 794(a)." Calloway v. Boro of Glassboro Dep't of Police, 89 F. Supp. 2d 543, 551 (D.N.J. 2000). Thus, whether cast as an ADA claim or a Rehabilitation Act violation, the gist of a complaint is some act of discrimination against the disabled due to a disability.

In the instant case, while Colon's amended complaint adequately alleges that the plaintiff suffered from disabilities, it does not recite well-pleaded facts that give rise to an inference that he was discriminated against or denied some prison program benefits due to these disabilities. Instead, the amended complaint describes something quite different—the sexual exploitation of an inmate by a correctional officer. As we discuss below, while this conduct may transgress other constitutional boundaries, it does not appear to state a violation of either the ADA or the Rehabilitation Act. Colon cannot save these factually bereft claims through the talismanic recital of the elements of an ADA or Rehabilitation Act claim.

Indeed, in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Twombly, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. In its current form, the instant amended complaint fails to meet this threshold standard for pleading ADA or Rehabilitation Act claims, and therefore those claims will also be dismissed.

### 5. Colon's Eighth Amendment Claims Against Defendant Harry May Not Be Dismissed on the Pleadings Alone

Finally, in their motion to dismiss the defendants seek to dismiss the Eighth Amendment claim lodged against Defendant Harry, the Superintendent at SCI Camp Hill. With our discretion cabined and confined to an assessment of the adequacy of Colon's pleadings, however, we find that Colon has alleged sufficient well-pleaded facts to allow this claim to proceed forward.

With respect to this Eighth Amendment claim against Superintendent Harry, the defendants' motion is noteworthy for what it does not allege. At the outset, the defendants do not dispute that the sexual exploitation of an inmate by correctional staff, like the alleged exploitation of Colon by Correctional Officer Kenwell, may violate the Eighth Amendment. Indeed, it is clear that sexual abuse of an inmate by

correctional staff offends the Eighth Amendment's prohibition against cruel and

unusual punishment. In this regard:

> The Eighth Amendment guarantees the right to be free from "cruel
> and unusual punishments" while in custody. Whitley v. Albers, 475
> U.S. 312, 318, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting U.S.
> Const. amend. VIII). A properly stated Eighth Amendment claim must
> allege a subjective and objective element. Hudson v. McMillian, 503
> U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). First, it must appear
> from the complaint that the defendant official acted with a
> "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294,
> 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). Second, the conduct
> must have been objectively "harmful enough," or "sufficiently
> serious" to violate the Constitution. Id. at 298, 303, 111 S.Ct. 2321.

Ricks v. Shover, 891 F.3d 468, 473 (3d Cir. 2018). Applying this paradigm, the

United States Court of Appeals for the Third Circuit has held:

> [T]hat prison sexual abuse can violate the Constitution. See
> Washington v. Hively, 695 F.3d 641, 643 (7th Cir. 2012); Boxer v.
> Harris, 437 F.3d 1107, 1111 (11th Cir. 2006); Schwenk v. Hartford,
> 204 F.3d 1187, 1197 (9th Cir. 2000); Giron v. Corr. Corp. of Am.,
> 191 F.3d 1281, 1290 (10th Cir. 1999); Boddie v. Schnieder, 105 F.3d
> 857, 861 (2d Cir. 1997). We agree that "sexual abuse of prisoners,
> once overlooked as a distasteful blight on the prison system, offends
> our most basic principles of just punishment." Crawford v. Cuomo,
> 796 F.3d 252, 260 (2d Cir. 2015). Sexual abuse invades the most basic
> of dignity interests: to be treated as a human being. We condemn such
> abuse as it is "simply not part of the penalty that criminal offenders
> pay for their offenses against society." Boddie, 105 F.3d at 861
> (quoting Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128
> L.Ed.2d 811 (1994) ).

Id.

In hewing to this course, this circuit has chosen to follow "the vast majority of courts to have addressed the issue [which] have found that sexual abuse or harassment of an inmate by a corrections officer may be 'sufficiently serious' as to violate the Eighth Amendment. See, e.g., Daskalea v. District of Columbia, 227 F.3d 433 (D.C. Cir. 2000) (affirming Eighth Amendment claim where prison guards sexually assaulted plaintiff and forced her to do a strip tease); Boxer v. Harris, 437 F.3d at 1111; Freitas v. Ault, 109 F.3d 1335, 1338 (8th Cir.1997); Boddie v. Schnieder, 105 F.3d 857, 860–61 (2d Cir.1997) (noting that "there is nothing in the decisions of the Supreme Court or of this court that denies the existence of [a sexual abuse claim under § 1983] and there is, instead, much to support it"); Women Prisoners v. District of Columbia, 877 F.Supp. 634, 665 (D.D.C. 1994) (reversed and remanded in part on other grounds by Women Prisoners v. District of Columbia, 93 F.3d 910 (D.C.Cir.1996)." Chao v. Ballista, 772 F. Supp. 2d 337, 347-48 (D. Mass. 2011).

In addition to Eighth Amendment deliberate indifference claims directly arising out of sexual abuse of inmates, courts recognize a closely related Eighth Amendment cause of action based upon a failure to intervene when other correctional staff violate the Eighth Amendment, although the contours and

22

parameters of this claim are carefully circumscribed. Thus, the United States Court of Appeals for the Third Circuit considered the question of whether a prison corrections officer has a duty to take reasonable steps to protect a victim from harm at the hands of a fellow officer in <u>Smith v. Mensinger</u>, 293 F.3d 641 (3d Cir. 2002).  Upon consideration of that issue, the Third Circuit held "that a corrections officer's failure to intervene . . . can be the basis of liability for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so."  <u>Id.</u> at 650.  In addition, the Court held "that a corrections officer can not escape liability by relying upon his inferior or non-supervisory rank vis-a-vis the other officers." <u>Id.</u>

Thus, <u>Smith</u> held that corrections officers may be liable under § 1983 for failing to intervene in an Eighth Amendment violation if they had a reasonable opportunity to do so.  Moreover, the court held that "neither rank nor supervisory status is a factor in assessing whether [a corrections officer] had 'a realistic opportunity to intervene.'" <u>Id.</u> at 652 (quoting <u>Miller v. Smith</u>, 220 F.3d 491, 495 (7th Cir. 2000)).  Accordingly, following <u>Smith</u>, the Eighth Amendment is implicated only in a narrow class of failure-to-intervene claims. To state a valid cause of action "in a case where an inmate claims an officer had a duty to take reasonable steps to protect a victim from another officer . . . , the inmate must

prove that (1) the officer had a duty to intervene; (2) the officer had the opportunity to intervene; and (3) the officer failed to intervene. Smith v. Mensinger, 293 F.3d 641, 650-51 (3d Cir.2002)." Knauss v. Shannon, CIV. 1:CV-08-1698, 2010 WL 569829 (M.D. Pa. Feb. 12, 2010).

Court have also recognized supervisory liability for alleged Eighth Amendment violations, albeit in very narrow and specific circumstances. As we have noted:

> [I]n Eighth Amendment cases based on allegations of deliberate indifference on the part of prison officials or other supervisory defendants, the Supreme Court has "rejected an objective test for deliberate indifference; instead it looked to what the prison official actually knew rather than what a reasonable official in his position would have known." Id. at 131. Specifically, the Supreme Court "held that 'a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety.'" Id. (quoting Farmer, 511 U.S. at 837). This requirement of actual knowledge on the part of supervisory officials "means that 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' " Id. (quoting Farmer, 511 U.S. at 837).

Burbage v. Sullen, No. 1:18-CV-915, 2018 WL 3060086, at *5 (M.D. Pa. May 3, 2018), report and recommendation adopted sub nom. Burbage v. Bechtold, No. 1:18-CV-0915, 2018 WL 3055903 (M.D. Pa. June 20, 2018) (quoting, Beers-Capitol v. Whetzel, 256 F.3d 120 (3d Cir. 2001)).

While these are plainly very exacting standards of persuasion and proof required to ultimately state an Eighth Amendment claim against a supervisory prison official like Superintendent Harry, at this stage of the proceedings where our view is limited to an examination of the well-pleaded facts set forth in the amended complaint, we find that Colon has sufficiently stated supervisory liability and failure to intervene claims against Defendant Harry. Fairly construed, that amended complaint describes a pattern of serial sexual exploitation of Colon by Correctional Officer Kenwell. The amended complaint then alleges that: "For 12 months, Defendant Kenwell did engage in unwanted grooming, touching, and intimate sexual contact with Plaintiff, which Plaintiff communicated to Defendant Kenwell's supervisor *and Defendant Harry, but no action was taken*." (Doc. 21, ¶ 9.) These allegations, while perhaps spare, are in our view sufficient to state a claim upon which relief may be granted, since they describe subjective knowledge by Harry of this sexual exploitation of Colon by a correctional officer and allege that, in the face of this knowledge, Harry failed to intervene and protect Colon. Since the amended complaint, on its face, states a viable Eighth Amendment claim against Defendant Harry, that claim may not be dismissed on the pleadings alone. Instead, the question of whether Colon can prove what he has alleged must await another day, and another proceeding.

### III. **Conclusion**

Accordingly, for the foregoing reasons, the defendant's motion to dismiss the amended complaint (Doc. 23) is GRANTED in part and DENIED in part as follows:

1. The motion to dismiss is GRANTED with respect to the plaintiff's ADA and Rehabilitation Act claims;

2. The motion to dismiss is GRANTED with respect to the plaintiff's claims for damages from the Commonwealth of Pennsylvania, Department of Corrections;

3. The motion to dismiss is GRANTED with respect to the plaintiff's state law negligence and intentional tort claims; and

4. The motion to dismiss is GRANTED with respect to the plaintiff's claims brought pursuant to the Prison Rape Elimination Act, 42 U.S.C. § 15602.

In all other respects the motion to dismiss is DENIED.

An appropriate order follows.


*/s/ Martin C.Carlson*
Martin C. Carlson
United States Magistrate Judge